# In the United States Court of Federal Claims

No. 14-1168C
(Originally Filed: February 6, 2015)
(Reissued: February 10, 2015)[*]

* * * * * * * * * * * * * * * * * * * *

ADAMS AND ASSOCIATES, INC.,

        *Plaintiff*,

v.

THE UNITED STATES,

        *Defendant*.

Bid protest; Job Corps Centers; Small Business Set-Asides; Statutory Construction; Workforce Investment Act

* * * * * * * * * * * * * * * * * * * *

*Gail Lindsay Simmons*, Washington, DC, and *Hopewell H. Darneille III*, for plaintiff.

*Elizabeth Ann Speck*, Civil Division, Department of Justice, Washington, DC, with whom were, *Joyce R. Branda*, Acting Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Kirk T. Manhardt*, Assistant Director, for defendant. *Amanda L. Tantum*, Civil Division, Department of Justice, Washington, DC, argued for defendant. *David R. Koeppel*, *Peter J. Dickson*, and *Savannah Wilson*, Office of the Solicitor, United States Department of Labor, Washington, D.C., of counsel.

————————

OPINION

————————

---

[*] This opinion was originally filed under seal. Publication was deferred pending parties' review for redaction of protected material. The parties did not propose any redactions. After updating the citation to the contemporaneous order in the companion case, the opinion is now prepared for release.

BRUGGINK, *Judge*.

This bid protest, brought by Adams and Associates, Inc., ("Adams" or "plaintiff"), once again challenges the solicitation by the Department of Labor ("DOL") for operation of the Shriver Job Corps Center ("Shriver") in Massachusetts. The agency began the solicitation process in 2012 at a time when Adams was the incumbent on a contract set to expire in 2013. Adams previously protested this procurement in 2012. The basis of that challenge, and the current one, is that DOL improperly set aside the procurement for small businesses, making Adams, a large business, ineligible to compete. The first protest was unsuccessful. We held that the agency had properly conducted a "rule of two" analysis and that the set-aside did not violate the Workforce Investment Act, Pub. L. No. 105 220, 112 Stat. 936 (1998) ("WIA") (amending various sections codified throughout Title 29). *Adams & Assocs., Inc. v. United States*, 109 Fed. Cl. 340 (2013). That decision was affirmed on appeal. 741 F.3d 102 (Fed. Cir. 2014). Adams' effort to obtain rehearing en banc was also unsuccessful. *Adams & Assocs., Inc. v. United States*, Nos. 13-5077 & 13-5080 (Fed. Cir. Mar. 14, 2014) (order denying rehearing en banc).

When DOL, having weathered Adams' challenge, began moving ahead with the procurement as a small business set-aside, Adams filed a protest in April 2014 with the Government Accountability Office ("GAO"). The thrust of the challenge was that, in the interim, Congress had taken certain legislative measures which directly impacted the procurement. The GAO rejected that challenge, in part because it viewed the new allegations as subject to *res judicata*; and because the allegations were or could have been brought before the Federal Circuit. *Adams & Assoc., Inc.*, B-409680 *et al.*, 2014 WL 1614214 (Comp. Gen. Apr. 22, 2014). Adams sought reconsideration, which was denied in November of 2014. *Adams & Assoc., Inc.*, B-409680.2 *et al.* (Comp. Gen. Nov. 12, 2014).

On December 4, 2014, Adams filed the present suit, attempting to block DOL from moving forward with the procurement in the face of congressional instructions, issued subsequent to our prior decision, to consider award to "high-preforming incumbent contractors" such as Adams. Essential to Adams' present complaint is its assumption that the agency's delay in moving ahead with the procurement in 2013 or 2014, particularly in light of legislation affecting the Job Corps program, amounted to a defacto new procurement decision. We disagree.

Pending are plaintiff's motion for judgment on the administrative record, defendant's cross-motion for judgment on the administrative record, or in the alternative, motion to dismiss for lack of jurisdiction, and defendant's motion to strike the extra-record material offered by plaintiff. The motions are fully briefed, and we heard oral argument on February 5, 2015.[2] For the reasons explained below, we grant defendant's motion to strike and its motion to dismiss. We deny plaintiff's cross-motion.

BACKGROUND

Given the extensive writing by three fora on the factual background of this procurement, we limit ourselves to the essentials and what plaintiff contends are developments after our first decision.

On December 14, 2012, DOL issued solicitation DOL12QA20003 for the operation of the Shriver center as a small business set-aside. AR at 3. By designating the contract for competition solely among small businesses, Adams, which is a large business, was excluded from competing. *See* 741 F.3d at 105; 109 Fed. Cl. at 346. The DOL solicitation and set-aside decision were upheld by this court, the Federal Circuit, and GAO. Adams is the incumbent operator for Shriver under contract DOLJ08QA00002, which originally ran from June 1, 2008 to May 31, 2013, but because of these protests, has been extended through bridge contracts until May 31, 2015.

On January 17, 2014, while the appeal to the Federal Circuit from our first decision was pending, Congress passed the Consolidated Appropriations Act of 2014 ("the Act"), the purpose of which is to fund various governmental programs. Pub. L. No. 113-76, 128 Stat. 5. The Act provides the following: "[t]o carry out subtitle C of title I of the WIA . . . $1,688,155,000, plus reimbursements, as follows: (1) $1,578,008,000 for Job Corps Operations, which shall be available for the period July 1, 2014 through June 30, 2015." 128 Stat. 349-50. It is undisputed that the appropriation involves funds that will be used to perform the contract in question. I.e., the legislation squarely affects this contract.

---

[2] Contemporaneously herewith we are issuing an order in a related matter, *Adams and Associates, Inc. v. United States*, No. 14-1180 (Fed. Cl. Feb. 10, 2015) ("*Gadsden*"), which involves the Job Corps Center in Gadsden, Alabama. Plaintiff in *Gadsden* makes the same arguments as in this case.

3

Section 4 of the Act provides as follows:

> The explanatory statement regarding this Act, printed in the House of Representatives section of the Congressional Record on or about January 15, 2014 by the Chairman of the Committee on Appropriations of the House, shall have the same effect with respect to the allocation of funds and implementation of divisions A through L of this Act as if it were a joint explanatory statement of a committee of conference.

128 Stat. 7. The Joint Explanatory Statement ("JES") referred to provides in relevant part that,

> When evaluating contract renewals or re-bids, due consideration should be provided to the federal investment already made in high-performing incumbent contractors as a part of a full, fair, and open competitive process. As part of this process, the Department of Labor (DOL) should consider documented past performances of student outcomes and cost-effective administration as important factors in Job Corps procurements.

160 Cong. Rec. H475 (daily ed. Jan. 15, 2014).

On the same day that the Act became law, DOL placed a special notice on a public website, FedBizOpps, whereby DOL released its "plan for all *upcoming* procurements for Job Crops center operations, Outreach and Admissions, and Career Transition Services . . . in order to give contractors the opportunity to review the plan" and provide feedback. AR at 627 (emphasis supplied). DOL expressed an interest in input from potential bidders regarding the maximum and optimal number of proposals that contractors could prepare and submit. DOL emphasized that it sought "generalized feedback" and that it was "not seeking, nor will it entertain contractor input regarding the release date, closing date or award date of specific procurements." AR at 628. Attached was a list of upcoming procurements with projected dates for requests for proposals ("RFP"). Because the RFP for Shriver already had been released, that facility was not included on the list. AR at 630.

After receiving feedback, DOL released a revised procurement plan on March 27, 2014, which included estimated dates by which DOL intended to release RFPs and then to make awards with respect to upcoming procurements. AR at 632. The revised procurement plan added a new list of "Ongoing

Procurements," however, with anticipated award dates. Shriver appeared on the latter list with an anticipated award date in May 2014. AR at 633. This list was updated in August 2014 and reflected that the Shriver award date was "TBA" because the "procurement is under protest." AR 636.[3]

## DISCUSSION

Having lost its prior challenge to this same procurement, plaintiff obviously faces a daunting task in resurrecting standing to thwart the agency's much-delayed award,[4] particularly as there is nothing in the administrative record that looks like a reopening of the solicitation. As we understand plaintiff's argument, it contends that the agency did, in fact, reopen the solicitation, as demonstrated by the January 17 FedBizOpps announcement and that, having done so, the "old" solicitation becomes irrelevant. According to plaintiff, DOL is now subject to new directions from Congress, as expressed in the JES, to give due consideration to the federal investment already made in high-performing incumbent contractors as a part of a full, fair, and open competitive process and should consider documented past performances of student outcomes and cost-effective administration. Presumably, Adams would benefit from such consideration.

There are a number of factual and legal deficiencies in this argument. The most basic is that the notice issued by DOL on January 17, 2014, announcing its plan for all *upcoming* procurements for Job Corps center operations, on its face, is not a reopening of the Shriver solicitation. Plaintiff's argument reduces to this: the agency could and should have reopened the

---

[3] On July 22, 2014, Congress enacted the Workforce Innovation and Opportunity Act ("WIOA"). Pub. L. No. 113-128, 128 Stat. 1425. WIOA amounts to a rewrite of the Workforce Investment Act, which controls the present procurement. WIOA does not take effect until July 1, 2015, and thus, while it deals very much with the same subject matter of the procurement  Job Corps Centers  plaintiff does not contend that it controls the result here.

[4] In order to have standing here, plaintiff must establish "1) that it is an actual or prospective bidder and 2) that it has a direct economic interest." *Orion Tech., Inc. v. United States*, 704 F.3d 1334, 1348 (Fed. Cir. 2013). Having failed in its argument that the solicitation should be open to large bidders, plaintiff would appear to be barred by *res judicata* from arguing that it can compete for award.

solicitation in view of all the criticism it had been subject to with respect to Job Corps Centers. It is telling, in plaintiff's view, that the agency did not go ahead with award after our decision in January 2013. Thus suggesting, presumably, that DOL was pondering reissuing the solicitation. What it neglects to account for is that there have been no more than a couple of weeks since our first decision in which the solicitation has not been subject to a bid protest.

Our jurisdiction requires more solid ground. DOL's willingness to receive industry feedback on its long range plan for future procurements simply does not morph into a new final decision with respect to the Shriver procurement. Adams has been excluded from competition by an agency action that was upheld by the courts and there has been no new agency action that would change that outcome. Adams is a large business and thus has no standing to object to an award limited to small businesses.

This fact is not altered by the Consolidated Appropriations Act of 2014 or its appended JES. While Section 4 of the Act provides that the explanatory statement regarding the Act by the Chairman of House Appropriations Committee "shall have the same effect with respect to the allocation of funds and implementation of divisions A through L of this Act as if it were a joint explanatory statement of a committee of conference," 128 Stat. 7, we hold that the Act needs no explanation. It merely appropriates money. There is no ambiguity as to meaning. The JES is superfluous legislative history, at best, and, in any event, does not have the weight of law. Neither the Act itself nor the JES reopen the solicitation. It remains limited to small businesses, and Adams is thus not a prospective bidder.

Even if plaintiff had standing, and the sentiments expressed in the JES were somehow applicable to the agency, the court would be in no position to decide whether it had given "due consideration" to incumbents or high performers. The language is precatory and directed at policy makers in the agency. It is not a proper basis for a legal challenge. Consistent with this view, we believe, is the high probability that Congress had no intent to interfere in an ongoing solicitation and instead was giving the agency fair warning as to how it expected future program monies to be handled.

In sum, whether viewed in terms of plaintiff's lack of standing to enforce legislation that does not affect this procurement, or the absence of a statute which can be "violated" in connection with this procurement, *see* 28

U.S.C. § 1491(b)(1), there is no jurisdiction to consider any aspect of the complaint.

We also agree with defendant that the extra-record materials are not appropriate for inclusion in the administrative record and are not otherwise necessary for effective judicial review. The court has reviewed the materials and concludes that, even if taken into account, they would not eliminate the jurisdictional deficiency here. They illustrate the larger problem with this protest it is an effort to draw the court into a policy matter. They do not reflect a reviewable procurement decision.

## CONCLUSION

For reasons explained above, we grant defendant's motion to strike and grant its alternative motion to dismiss for lack of jurisdiction. Plaintiff's motion is denied. The clerk is directed to enter judgment accordingly. No costs.

s/ Eric G. Bruggink
ERIC G. BRUGGINK
Judge